UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH PAUL YORK,

    Plaintiff,

    v.

MATTHEW CATE, et al.,

    Defendants.

Case No. 13-cv-00868-JST (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 35

    Plaintiff, a prisoner at Pelican Bay State Prison ("PBSP"), has filed a pro se complaint under 42 U.S.C. § 1983 alleging that he was deprived of various basic needs while placed on contraband surveillance watch in February 2011, in violation of the Eighth Amendment. Defendants have filed a motion for summary judgment based on failure to exhaust administrative remedies. Docket No. 35. For the reasons set forth below, the motion for summary judgment is GRANTED.

**BACKGROUND**

    The following facts are undisputed unless otherwise indicated:

    Since 2008, the California Department of Corrections and Rehabilitation ("CDCR") has handled medical grievances separately from nonmedical grievances. Docket No. 19 at 2. Medical grievances are submitted on pink 602 forms (now labeled 602-HC to designate a health care grievance) while nonmedical grievances are submitted on green 602 forms. Id. The Health Care Appeals Office ("HC Appeals Office") conducts the first-level and second-level review of medical grievances, and the Inmate Correspondence and Appeals Branch (formerly named the Office of Third Level Appeals – Health Care) handles the third-level review. Id. Nonmedical grievances are reviewed by the Institutional Appeals Office ("IAO"). Id. at 3 and Docket No. 20 at 2.

Nonmedical grievances are reviewed at the first level by the IAO. Docket No. 20 at 2. A second-level review is performed by the warden or someone at a similar level (Warden's Level), and the third-level review is conducted by a designated representative of the CDCR Secretary (Director's Level). Cal. Code Regs. tit. 15, § 3084.7(d)(2) and (3) (2014).

On February 23, 2011, an inmate-manufactured weapon was discovered in Plaintiff's cell during a random search. Docket No. 21, Ex. C. As a result, Plaintiff was charged with the attempted manufacture of a deadly weapon and placed in Contraband Surveillance Watch ("CSW") pending the recovery of contraband. Id. at Exs. C and D and Docket No. 1 at 3. Prisoners are placed in CSW when prison officials have reason to believe that the prisoner has concealed contraband in his body, the prisoner refuses to surrender the contraband, and a physician has determined that physical removal of the contraband may be hazardous to the health and safety of the prisoner. CDCR Operations Manual § 52050.23 (2011). Prisoners placed in CSW are kept in a controlled isolated setting under constant visual observation. Id. Correctional officers are required to search the fecal matter of prisoners placed in CSW for contraband. Id. at § 52050.23.7. Prisoners are retained on CSW until it is determined that the prisoner is contraband free, either when the prisoner voluntarily surrenders the contraband, the contraband is retrieved by natural means, or the prisoner completes at least three bowel movements free of contraband. Id. at §§ 52050.23 and 52050.23.8.

On March 24, 2011, Plaintiff submitted an administrative grievance on a green nonmedical grievance form (CDCR Form 602). Docket No. 1 at 9 and Docket No. 27 at 2. Plaintiff complained that CSW conditions and procedures were "torturous" in violation of state, federal, and international laws. Docket No. 1 at 9–11. He complained specifically about being restricted by handcuffs, waist chains, and leg restraints; being required to either sit or stand on hard concrete for eighteen hours a day; not being provided with requested pain medication or sleeping pills; being subjected to continuous intense lighting 24 hours a day; being deprived of privacy while defecating or urinating; being forced to defecate and urinate in front of female correctional officers; and being subjected to unhygienic conditions in his CSW cell. Id. at 10. Plaintiff requested a medical "chrono" ordering him alternative CSW procedures to accommodate his

2

medical issues, and monetary damages from each correctional officer who engaged in the unconstitutional CSW acts. Id. at 10–11.

Plaintiff's grievance was received by the IAO and rejected because the appeal action requested was unclear. The rejection states:

> The enclosed documents are being returned to you for the following reasons:
>
> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(13). The appeal is incomplete. Your appeal is being returned for the following reason(s):
>
> The appeal action requested is not clear with the exception of the request for money.
>
> What is the request for a medical chrono for CSW about?

Docket No. 20, Ex. B at 1.

The parties disagree as to whether Plaintiff resubmitted the grievance. Defendants claim that Plaintiff did not resubmit the grievance "because there is no record of any subsequent rejection or acceptance of such a grievance" and that this grievance was forwarded to the HC Appeals Office because it raised medical issues. Docket No. 20 at 4–5. Plaintiff, however, claims that he resubmitted the grievance by adding additional clarifying language to Section B of the 602 originally submitted. Docket No. 38 at 5. Plaintiff appears to be claiming that the initial 602 submitted did not have a second paragraph, and that the second paragraph was added in response to the IAO rejection. The second paragraph in Section B of the 602 states: "My request for a medical chrono for 'CSW' is about being issued a medical chrono for 'CSW' because of my medical issues. The restraints used during 'CSW' cause me pain because of my medical issues. That is why I described different procedures I am willing to consent to like x-rays, forced anal extractions, etc." Docket No. 1 at 10.

The parties agree that the grievance made its way to the HC Appeals Office. Defendants state that because the grievance raised medical concerns, the IAO forwarded it to the HC Appeals Office and attached a pink medical grievance form to it (CDCR Form 602-HC). Id. The grievance was received by the HC Appeals Office on April 5, 2011. Id. at 3, 12 and 17. Plaintiff argues that the fact that the grievance was forwarded to the HC Appeals Office proves that he did resubmit the grievance. Docket No. 38 at 5–6. He states that the grievance was returned to him

along with the rejection letter and that if he had not resubmitted the grievance, the IAO would have been unable to forward it to the HC Appeals Office.  Id.

On July 22, 2011, Plaintiff's grievance was denied by the HC Appeals Office at the first level in a "First Level Reviewer's Response."  Docket No. 19 at 17.  The response stated that Plaintiff's grievance set forth three requests and explained why each request was denied.  The response stated that Plaintiff's first request "[t]o be issued a medical chrono for contraband surveillance watch" was denied because a nurse's examination and x-rays did not show any medical issues requiring a medical chrono.  Id.  The response stated that Plaintiff's second request "[t]o be given alternate procedures for contraband surveillance watch due to medical issues" was denied because "there were no medical issues identified at the time of [Plaintiff's] evaluation requiring alternate procedures for contraband surveillance watch."  Id.  Plaintiff's third request for $5,000 from each person who participated in the contraband surveillance watch was denied because monetary compensation is beyond the scope of the prison appeals process.  Id.  The response did not address Plaintiff's claim that the CSW conditions violated his constitutional rights.  Id.

On August 4, 2011, Plaintiff appealed the first-level denial on two grounds.  He stated that the reviewer failed to address the violation of his constitutional rights and that medical staff failed to perform the full medical evaluation sufficient to conclude that he did not require a medical chrono.  Docket No. 19 at 12, 16.  In his response, Plaintiff specifically asked, "How come none of the multiple Constitutional violations complained of have been addressed in the denial?"  Id. at 16.

On September 26, 2011, Plaintiff's appeal was rejected for exceeding the attachment limits,[1] and for changing the focus of the grievance to an entirely new issue.  Docket No. 19 at 23–25.  Plaintiff was informed that his appeal could not go forward unless he could show that the above issues were inaccurate.  Id. at 23, 25.

Plaintiff responded via a written letter that was received by the HC Appeals Office on

---

[1] California Code of Regulations, title 15, section 3084.6(b)(5) limits inmates to one CDCR Form 602-A (08/09) Inmate/Parolee Appeal Form Attachment per appeal.

4

October 18, 2011. Docket No. 19 at 26. Plaintiff denied attaching more than one 602-A form, explaining that the other attachments were supporting documents, which was allowed under the applicable regulations. He also denied changing the focus of his grievance:

> My appeal does not contain a change to my initial action requested … [nor] has my appeal changed to a new issue that would violate Title 15, 3084.6(b)(16) as you claim. If so I ask that you clearly state . . . and show where this change to my initial action requested has occurred. Because if what you have alleged is correct, then why was my appeal not previously rejected for this reason? Seeing as how my action requested is only addressed one time during the original filing of my 602. And not again as the 602 process continues.

Id.

The HC Appeals Office then accepted Plaintiff's grievance for review, Docket No. 19 at 4, and on October 31, 2011, Plaintiff's grievance was denied at the second level in a "Second Level Reviewer's Response," id. at 18. The second-level response denied his request for a full medical evaluation on the same grounds as the first appeal was denied. Id. In describing the appeal issue, the second-level response also stated: "You state your constitutional rights were violated and have not been addressed in this appeal." Id. However, the second-level response failed to discuss Plaintiff's constitutional violations beyond this mention. Id.

Plaintiff appealed his second-level denial, and his appeal was denied at the third level on February 16, 2012, by the Chief of the California Correctional Health Care Services. Docket No. 19 at 19–20. In this third-level response, Plaintiff's appeal issues were summarized as follows:

> Your CDCR 602-HC submitted on March 24, 2011, indicated you were sent to contraband surveillance watch and the conditions/procedures of contraband surveillance were torturous. You told custody staff about your pain and medical issues and asked for alternative procedures.
>
> You requested the following:
> - To be issued a medical chrono for contraband surveillance watch to include alternative procedures such as x-rays and forced anal extractions
> - To receive monetary compensation in the amount of $5,000.00 from each person who participated in and upheld the unconstitutional act.

Id. at 19. The third-level response denied Plaintiff's request for a medical chrono, noting that Plaintiff had undergone three medical examinations since his grievance was filed and that there

5

1   was no medical indication for chronos or alternate CSW procedures. Id. at 19–20. Plaintiff was
2   also informed that CSW procedures were custody issues and would not be addressed in a health
3   care appeal. Id. at 20. Plaintiff was directed to submit a separate appeal to the Institutional
4   Appeals Office if he wished to appeal CSW procedures. Id. Plaintiff was informed that this third-
5   level denial exhausted Plaintiff's available administrative remedies. Id.

Following this denial, Plaintiff spent the next year trying to obtain copies of the procedures and rules governing CSW (Docket No. 1 at 14–15) and to review his file (id. at 16–26) in preparation for filing a lawsuit regarding the constitutional violations he suffered while on CSW.

Plaintiff filed this action on February 26, 2013.

**DISCUSSION**

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most

favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Because Plaintiff is representing himself pro se and has signed his pleadings under penalty of perjury, the Court treats them as evidence for the purpose of summary judgment. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); see also Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (verified motions function as affidavits and are admissible to oppose summary judgment); Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (pleading counts as "verified" if the drafter states under penalty of perjury that the contents are true and correct).

The failure to exhaust administrative remedies is an affirmative defense that must now be raised in a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). In bringing such a motion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

B.   Analysis

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all of their available administrative remedies prior to filing suit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997(e) (2014), unconst'l on other grounds, Siggers-El v. Barlow, 433 F. Supp. 2d 811, 813 (E.D. Mich. 2006). In order to properly exhaust his or her administrative remedies, a prisoner's

1  "grievance . . . need not contain every fact necessary to prove each element of an eventual legal
2  claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its
3  resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.
4  2009).   Whether an inmate's grievance satisfies the PLRA's exhaustion requirement is determined
5  by the prison's own grievance process. Griffin, 557 F.3d at 1120.

6  The State of California provides its inmates the right to administratively appeal
7  "departmental policies, decisions, actions, conditions, or omissions that have a material adverse
8  effect on the welfare of inmates and parolees." Cal. Code Regs. tit. 15, § 3084.1(a) (2014).  In
9  order to exhaust available administrative remedies within this system, a prisoner must generally
10 proceed through three levels of appeal: (1) a written appeal on a CDC 602 inmate appeal form
11 describing the specific issue under appeal and the relief requested, id. § 3084.2; (2) a second-level
12 appeal to the institution head or designee, id. § 3084.7(b) and (d)(2); and (3) a third-level appeal to
13 the Director of the California Department of Corrections, id. § 3084.7(c) and (d)(3).  A final
14 decision at the director's level satisfies the exhaustion requirement under the PLRA. See id. at §
15 3084.7(d)(3). Medical grievances are processed separately from nonmedical grievances. Docket
16 No. 19 at 2.  To exhaust medical grievances, prisoners must pursue administrative remedies
17 through the HC Appeals Office. Id.  To exhaust nonmedical grievances, prisoners must pursue
18 administrative remedies through the IAO. Id.

19 Plaintiff does not dispute that there is an available administrative remedy, so the Court
20 turns to the question of whether Plaintiff exhausted that remedy.  Defendants argue that Plaintiff
21 has only exhausted his medical claim regarding his request to, in the future, be provided with
22 alternatives to CSW procedures due to his medical issues.  Defendants state that Plaintiff has not
23 exhausted the claim at issue in this litigation: that he was deprived of various basic needs while on
24 CSW in violation of the Eighth Amendment.  Plaintiff argues that both his request for alternative
25 CSW procedures and his allegation that CSW conditions were unconstitutional were presented in
26 the same grievance.  Therefore, argues Plaintiff, he exhausted both claims when his grievance was
27 denied at the third level by the Chief of the California Correctional Health Care Services.
28 Plaintiff's belief that he has exhausted his administrative remedies for his constitutional

claim is mistaken. It is undisputed that the administrative remedies for nonmedical grievances are distinct from those for medical grievances. Exhaustion of a nonmedical grievance requires submitting it to the IAO and appealing it through all three levels of review, culminating in a review by the designated representative of the Secretary of the CDCR. See Cal. Code Regs. tit. 15, § 3084.7 and CDCR Operations Manual § 54100.13.3. Plaintiff's claim regarding the constitutionality of CSW procedures was submitted only for first-level review at the IAO, and afterwards Plaintiff incorrectly appealed it via the health care grievance system.

Plaintiff's erroneous belief that he has exhausted administrative remedies is due in part to prison officials' failure to follow prison regulations. Prison regulations require that the first-level and second-level response "accurately describe the matter under appeal and fully address the relief requested. . . . If the decision is a partial grant of the appellant's requested action(s), the response shall clearly state which action(s) or relief has been granted, granted in part, or denied, and shall also state the action taken." CDCR Operations Manual § 54100.15. The first-level and second-level responses to his grievance failed to address his claim regarding the constitutionality of CSW procedures and failed to inform Plaintiff that this claim could not be addressed by the HC Appeals Office. Pursuant to CDCR regulations, the first-level response should have accurately described that Plaintiff was both seeking a medical chrono for alternative CSW procedures and challenging the constitutionality of CSW procedures. Additionally, the first-level response should have specified that it would not be considering Plaintiff's constitutional claim. Instead, the first-level response fails to mention Plaintiff's constitutional claim at all. Docket No. 19 at 17.

Plaintiff diligently attempted to ensure that prison officials addressed his claim of constitutional violations. In appealing the first-level response, he noted that none of his allegations regarding the unconstitutionality of CSW procedures had been addressed and questioned why. Id. at 16. The second-level response did not address this allegation, as required by prison regulations, though it did accurately note that Plaintiff had raised this issue in his appeal. Id. at 18. Due to the prison officials' failure to either deny the claim or clearly state what other action was being taken — as required by prison procedures for processing grievances — Plaintiff reasonably assumed at this point in the administrative remedy process that he was pursuing the

1  appropriate administrative remedy for his claim regarding constitutional violations.

2  However, the third-level response clearly informed Plaintiff that any challenges to CSW
3  procedures could not be addressed in a health care appeal: "Procedures related to contraband
4  surveillance watch is a custody issue and as such will not be addressed in a health care appeal; you
5  will need to submit a separate appeal to the Institution Appeal Office if you wish to appeal this
6  issue." Docket No. 19 at 20 (sic).  The third-level response continued on and explained why
7  Plaintiff's requests regarding medical treatment and medical chronos were being denied. Id. The
8  response concluded by stating: "This decision exhausts your available administrative remedies."
9  Id.  The third-level response does not specify that administrative remedies were satisfied only for
10 Plaintiff's medical claim, but to assume that administrative remedies had also been satisfied for
11 Plaintiff's constitutional claim would be to ignore the third-level response's clear instruction
12 otherwise.  Despite this clear instruction, Plaintiff failed to appeal his claim regarding CSW
13 procedures to the IAO.

14 The PLRA's exhaustion requirement is mandatory and no longer left to the discretion of
15 the district court. Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S.
16 731, 739 (2001)).  "The obligation to exhaust 'available' remedies persists as long as *some* remedy
17 remains 'available.'" Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).  Plaintiff still has an
18 available remedy.[2]  He may finish appealing his constitutional claim through the IAO.[3]

---

[2] The Court finds that this remedy is still available despite the requirement that appeals be submitted within 30 calendar days of the prisoner's receipt of an unsatisfactory response to an appeal. CDCR Operations Manual § 54100.16.  The appeals coordinator or third-level Appeals Chief has the discretion to accept an appeal beyond the 30-day policy where there is "compelling evidence" of "exceptional circumstances" that support the conclusion that the appeal should be subject to further review. Id.

[3] If Plaintiff resubmits his grievance regarding constitutional violations to the IAO and the grievance is rejected for being untimely, there is the possibility that his failure to exhaust should be excused due to prison officials' failure to follow prison procedures and inform him at the first and second level that this claim could not be considered by the HC Appeals Office. See, e.g., Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2009) (finding that the prison officials' mistake rendered prisoner's administrative remedies effectively unavailable and excusing prisoner's untimely filing of an appeal), distinguished on other grounds by Albino, 697 F.3d at 1033–35; see also Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008) (suggesting a prisoner is excused from the exhaustion requirement when "prison officials obstruct[ ] his attempts to exhaust" or

United States District Court
Northern District of California

The burden now shifts to Plaintiff to provide evidence showing that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Plaintiff has made no such showing because he believes (incorrectly) that he has exhausted his administrative remedies. Accordingly, the Court GRANTS Defendants' motion for summary judgment, and Plaintiff's claim that CSW procedures violated his Eighth Amendment rights is subject to dismissal without prejudice. See McKinney v. Carey, 311 F.3d 1198, 1200–01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 35) is GRANTED without prejudice to Plaintiff filing a new action after exhausting California's prison administrative process. See, e.g., McKinney, 311 F.3d at 1200–01. Defendants' request for judicial notice (Docket No. 36) is GRANTED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February 5, 2015

JON S. TIGAR
United States District Judge

---

"procedures for processing grievances weren't followed by prison officials"). But see Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). However, until Plaintiff exhausts his available remedies, any such discussion is premature.

11